```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAISY WESTON                    :    CIVIL ACTION
                                :
         v.                     :
                                :
FARBERWARE LICENSING CO.,       :    NO. 23-2607
LLC, et al.                     :
```

MEMORANDUM

Bartle, J.                                                May 13, 2025

      Plaintiff Daisy Weston has sued defendants Farberware Licensing Co. ("Farberware") and Walmart, Inc. ("Walmart") in this products liability action for burn injuries sustained from an allegedly defectively designed pressure cooker. She also brings a failure to warn claim. Subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a).

      Before the court is defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1]

I.

      Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

1. Defendants filed concurrently with their summary judgment motion a motion to preclude the testimony of plaintiff's expert, Craig Clauser, under Rule 702 of the Federal Rules of Evidence. The court has decided the latter motion in a separate opinion and order. See Weston v. Farberware, 23-cv-2607 (E.D. Pa. May 12, 2025)(Doc. #85, 86).

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II.

The facts, viewed in the light most favorable to plaintiff, the non-moving party, are as follows.  In December 2021, plaintiff purchased a Farberware electronic pressure cooker from a Walmart retail location in Philadelphia.

Plaintiff, who had previously owned a pressure cooker manufactured by another company, chose the Farberware product because it was on sale. Although plaintiff had read the instruction manual for her previous, non-Farberware pressure cooker, she at no time read the instruction manual for the new purchase. Neither does she assert that she read the warnings on the product itself or on the box containing the product. After unboxing the pressure cooker, plaintiff disposed of both the packaging and the user manual.

On March 6, 2022, plaintiff used the pressure cooker to cook steak. She filled the chamber of the pressure cooker up to, but no higher than, the "max" line with steak, oil, water, and spices.[2] She then closed the lid and set the pressure cooker to its "steak/meats" function, as a result of which the pressure cooker heated the contents for approximately thirty-five minutes. During this time, plaintiff continued to cook other food in her kitchen, accompanied at times by two of her children.

At the end of the thirty-five-minute period, the pressure cooker began to beep to notify plaintiff that it had finished cooking the steak. Plaintiff then engaged the "steam-

---

1. While plaintiff states that she filled the chamber no higher than the "maximum" line, defendants argue that she may have filled it higher.

3

release" valve, which releases steam from the pressure cooker and depressurizes the inner chamber. After waiting for approximately five minutes, plaintiff opened the lid with her right hand without difficulty.[3]

At that moment, according to plaintiff and her daughter, food and oil suddenly and forcefully erupted from the pressure cooker onto plaintiff's neck, arms, and chest. Covered in hot oil and food, plaintiff "felt like [she] was burning inside" and was taken by ambulance to Temple Hospital, where she was treated for burns. She remained in intensive care for approximately one week before returning home. Plaintiff's neck, arms, and chest remain substantially and permanently scarred.

### III.

Defendants largely predicate their motion for summary judgment on their arguments to preclude the testimony of plaintiff's expert, Craig Clauser. According to defendants, without the expert testimony of Clauser, plaintiff cannot succeed as a matter of law. The court in a separate decision has denied plaintiff's motion to preclude Clauser's testimony related to the defective design of the pressure cooker. See Weston v. Farberware, No. 23-cv-2607, slip. op. at 15 (E.D. Pa.

---

3. Yet another dispute of material fact, defendants theorize that plaintiff could have forced the lid open, despite it being locked.

May 12, 2025) (Doc. #85).  There is sufficient evidence to go to the jury on this issue.  To this extent, the defendants' motion for summary judgment will be denied.

Plaintiff also relies on the failure to warn theory to establish liability.  The court has excluded Clauser's testimony in this regard and to this extent defendants' motion for summary judgment will be granted.  Plaintiff cannot prevail on this theory because plaintiff did not read the Farberware user manual, did not base her purchase on the packaging, disposed of both the manual and the packaging before using the cooker, and does not claim to have examined the warnings on the product itself.  See Wright v. Ryobi Techs., Inc., 175 F. Supp. 3d 439, 454 (E.D. Pa. 2016).

Finally, the court has ruled in defendant's favor to exclude Clauser's testimony related to the consumer expectations test.  See Weston v. Farberware, No. 23-cv-2607, slip. op. at 18 (E.D. Pa. May 12, 2025) (Doc. #85).  It did so on the ground that Clauser has no special expertise that is relevant to this test, which does not depend at least here on expert testimony. See Tincher v. Omega Flex, Inc., 104 A.3d 328, 392 (Pa. 2014) (citing Soule v. Gen. Motors corp., 882 P.2d 298, 308-09 (Cal. 1994)).[4]

---

4. Defendants also moved for summary judgment as to plaintiff's claims for punitive damages.  The court will grant this motion

IV.

The court must now decide whether there are any disputes of material fact so as to allow this case to proceed to trial on the consumer expectations test without expert testimony. Under Pennsylvania Law, a plaintiff in a products liability action must show: (1) that the product was defective, and (2) that the defect was a substantial factor in causing the injury. Spino v. John S. Tilley Ladder Co., 696 A.2d 1169, 1172 (Pa. 1997). Pennsylvania recognizes three types of defective conditions that can give rise to a strict liability claim: a defect in design, a defect in manufacturing, and a failure to warn. Phillips v. A-Best Prods. Co., 665 A.2d 1167, 1170 (Pa. 1995).

For strict products liability actions, Pennsylvania uses a "composite test," in which the plaintiff "may show a defective condition through either (or both) the consumer expectations test or the risk-utility test." Sullivan v. Werner Co., 306 A.3d 846, 860 (Pa. 2023). The two tests are "not mutually exclusive, and plaintiffs may pursue them both in the alternative." L.T. v. Kubota Mfg. of Am. Corp., 332 A.3d 47, 59 (Pa. Super. 2025).

---

as plaintiff has agreed to withdraw her claim for punitive damages.

The consumer expectations test, however, applies only under certain circumstances. The test "defines a 'defective condition' as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplations." Tincher, 104 A.3d at 387. In other words, under the consumer expectations test, "the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." Id. On the other hand, a product is not defective if "the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains." Id. Factors to be considered are "[t]he nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by a manufacturer or seller." Id.

It is important to understand the rationale underlying the consumer expectations test. As explained by the California Supreme Court in Soule v. General Motors Corp., upon which the Pennsylvania Supreme Court relied in Tincher, "the ordinary users or consumers of a product may have reasonable, widely accepted minimum expectations about the circumstances under which it should perform safely. Consumers govern their own conduct by these expectations, and products on the market should conform to them." 882 P.2d 298, 307-08 (Cal. 1994).

7

Defendants maintain that the consumer expectations test does not apply to this case because the Farberware pressure cooker is too complex a product for an ordinary consumer to have any expectations as to its safety. "A complex product . . . may often cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance" and thus remove the facts from the ambit of the consumer expectations test. Id. at 308. However, the test is not inapplicable merely because "a complex product[] or technical causation are at issue." Id. at 309. The line is not so bright. "The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." Id.

Where the circumstances of a product's alleged failure are easily contemplated by the product's ordinary consumer, the test applies. The Pennsylvania Superior Court overturned the grant of summary judgment to preclude the application of the consumer expectations test where a tractor lawn mower, moving in reverse, injured a child's foot when the child slipped and fell behind the tractor mower. L.T., 332 A.3d at 65 (Pa. Super. 2025). The court ruled that this was an appropriate case for the jury to decide whether the defendants would be liable under

8

the consumer expectations test.  Id. at 65-66.  It explained it was reasonable for an ordinary consumer to expect that tractor mower manufacturers would implement a guard on the rear of their mowers to protect children.  Id. at 65-66.

Likewise, the Superior Court in another case reversed the grant of summary judgment in favor of a defendant where liquid concrete resulted in third-degree burns to its users. High v. Pennsy Supply, Inc., 154 A.3d 341, 350 (Pa. Super. 2017).  The court reasoned that even if the public is aware that liquid concrete could be dangerous, a genuine issue of material fact existed as to whether an ordinary consumer could at a minimum expect that it would not burn one's body so gravely. Id.

In contrast, where the circumstances of a product's alleged failure are not easily contemplated by the product's ordinary consumer, the circumstances do not engage the ordinary consumer's minimum safety assumptions one way or the other.  In these cases the test does not apply.  The California Supreme Court addressed such a dynamic situation in Soule.  There, a woman was driving her car on a damp roadway without her seatbelt when another vehicle suddenly skidded and collided with the front, left part of her car.  Soule, 882 P.2d at 301.  She was severely injured.  Id.  Estimates of the vehicle's closing speeds varied greatly.  Id.  As a result of the collision, the

the consumer expectations test.  Id. at 65-66.  It explained it was reasonable for an ordinary consumer to expect that tractor mower manufacturers would implement a guard on the rear of their mowers to protect children.  Id. at 65-66.

Likewise, the Superior Court in another case reversed the grant of summary judgment in favor of a defendant where liquid concrete resulted in third-degree burns to its users. High v. Pennsy Supply, Inc., 154 A.3d 341, 350 (Pa. Super. 2017).  The court reasoned that even if the public is aware that liquid concrete could be dangerous, a genuine issue of material fact existed as to whether an ordinary consumer could at a minimum expect that it would not burn one's body so gravely. Id.

In contrast, where the circumstances of a product's alleged failure are not easily contemplated by the product's ordinary consumer, the circumstances do not engage the ordinary consumer's minimum safety assumptions one way or the other.  In these cases the test does not apply.  The California Supreme Court addressed such a dynamic situation in Soule.  There, a woman was driving her car on a damp roadway without her seatbelt when another vehicle suddenly skidded and collided with the front, left part of her car.  Soule, 882 P.2d at 301.  She was severely injured.  Id.  Estimates of the vehicle's closing speeds varied greatly.  Id.  As a result of the collision, the

frame of the car bent, one of the wheels hit the underside of the floor pan, and the floor pan crumpled. Id. The California Supreme Court rejected application of the consumer expectations test because the circumstances of the car's alleged failure did not engage consumer expectations. Id. at 310. The "esoteric circumstances" of the crash--the dampness of the roadway, the speed of the cars, the plaintiff's lack of a seatbelt, the precise point of collision, and the complex chain of events involving the car's parts--all required assessing complicated design considerations. Id. Simply put, an ordinary consumer of automobiles has no expectations one way or another about how their vehicle will react under such circumstances.

The circumstances alleged here are easily contemplated by the ordinary pressure cooker user. They are much more like a tractor lawn mower backing over a child or liquid concrete burning its user. While defendants emphasize the complex engineering of the Farberware pressure cooker, the circumstances of the accident are not complex as in Soule. According to the testimony of plaintiff and her daughter, plaintiff followed the proper procedure in using the pressure cooker, just as thousands of pressure cooker users do every day. Upon opening the lid, the contents of the pressure cooker suddenly exploded onto plaintiff. This bears none of the same "esoteric circumstances" of a car crash in the rain. The ordinary pressure cooker

10

consumer could very well understand that the lid of the cooker is to remain locked when the cooker is pressurized.

This conclusion also comports with the rationale underlying the consumer expectations test. Ordinary users of a pressure cooker certainly have "commonly accepted minimum safety expectations" of these products under the facts that will be before the jury. They govern their use of these products to conform to those expectations. There are sufficient facts here for the court to submit this action to the jury on the consumer expectations test.

Defendants' motion for summary judgment with respect to plaintiff's reliance on the consumer expectations test will be denied.

V.

It is undisputed that defendant Farberware Licensing Co., LLC was not the designer, manufacturer, distributor, or seller of the pressure cooker in issue but merely a trademark licensor. It had an agreement with the designer and manufacturer which allowed Farberware to imprint its name on the pressure cooker in issue. In addition to appearing on the pressure cooker itself, the name also appeared on the box in which it was packaged as well as on its instruction manual. As a trademark licensor only, Farberware maintains that it cannot be liable to plaintiff and is thus entitled to summary judgment.

11

The Supreme Court of Pennsylvania adopted § 400 of the Restatement of Torts (Second) in Forry v. Gulf Oil Corp., 237 A.2d 593, 599 (Pa. 1968). Section 400 provides, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

In that products liability action, the plaintiff, a mechanic, claimed that a defective snow tire had caused him an injury. Id. at 594-95. The tire had been manufactured by B.F. Goodrich and distributed to Gulf Tire & Supply Co. ("Gulf Tire") who sold it to the user. Id. at 594. The name "Gulf Tire" was embossed on the casing of the tire. Id. at 599. The Court explained that liability extends to such an entity as the placement of its name and trademark on a product "constitute[s] an assurance to the user of [its] quality." Id. (quotations omitted). The Court rejected the argument that liability did not attach because the plaintiff placed no reliance on the name on the tire. Id.

More recently, the Superior Court of Pennsylvania reached the same result in Brandimarti v. Caterpillar Tractor Co., 527 A.2d 134 (Pa. Super. 1987). There a plaintiff brought a strict liability action against several defendants for personal injuries he allegedly suffered when a forklift he was operating overturned. Id. at 135-36. The trial court directed

12

a verdict in favor of defendant Caterpillar Tractor Co. because the evidence established that it did not manufacture or sell the forklift.  Id. at 139.  It had been manufactured by its wholly owned subsidiary, Towmoter, Inc.  Id.  Nonetheless, the Caterpillar trademark was "conspicuously displayed on the forklift."  Id. (emphasis omitted).  The court overturned the trial court and held that while Caterpillar was not the manufacturer in the chain of distribution, its name was displayed on the forklift and "Caterpillar could expect others to purchase the product in reliance on the skill and reputation associated with the Caterpillar name."  Id. at 139-40.  Accordingly, Caterpillar Tractor Co. could be held strictly liable if the forklift was defective and caused plaintiff any injuries.  Id. at 140.

Plaintiff bought the pressure cooker in issue with the name Farberware prominently displayed on it.  Whether she relied on the fact that it purported to be a Farberware product is irrelevant.  Equally irrelevant is whether Farberware was involved in the design or manufacture of the product.

The motion of Farberware Licensing Co., LLC for summary judgment on the ground that it is merely a trademark licensor will be denied.

13